**Exhibit A**

*Town of Hopkinton*
Hopkinton, Rhode Island 02833

Incorporated 1757

Office of the
BUILDING INSPECTOR
Zoning Inspector
Electrical Inspector
Plumbing/Mechanical
Inspector

February 22, 2002

To: Members of the Hopkinton Town Council

From: Charles M. Mauti Building and Zoning Official

Re: Chief Scuncio's Behaviors

Recent events have occurred that I find quite disturbing. I am writing to frame my perspective for the members of the Town Council and to ask for some action to protect town residents and employees from what amounts to a breach of privacy. Please allow me to explain my perspective.

1. Chief Scuncio has conducted a criminal background check on Greg Pezza, a taxpayer and member of several town boards. Although Mr. Pezza appears to have some issues in his background that may raise questions about his suitability for board membership, his behavior and conduct as a board member have raised no suspicion with respect to his actions or his judgment.
2. The behaviors and judgment embodied in Chief Scuncio's actions, however, do raise serious concerns and questions with respect to propriety, and his actions do carry grave consequences for the Town.

Because he was asked, Chief Scuncio has conducted a background check into Greg Pezza'a history which revealed several pieces of information that are proving to be quite embarrassing and damaging to Greg Pezza. Although the focus of attention has been on Pezza's background, the real problem, the real threat to the taxpayers, from my perspective, is Chief Scuncio's poor judgment and reactive behaviors. It is the reasoning and behavior of the Chief that are most disturbing – his investigation into Pezza'a background constitutes no less of an abuse of power and a violation of privacy.

As he stated in the newspaper, he has chosen to investigate on the basis of the Westerly Sun's inquiry, and he has chosen to publicize the information. Both of these actions reflect poor judgment, an abuse of his position, a flagrant disregard for his duties and responsibilities and raise serious questions relative to

his motives for such blatant disregard of an individual's right to privacy. In addition, his behaviors clearly expose the Town to a number of litigious responses. It is important to be aware that there are penalties for the misuse of background checks which include sanctions to the police department, penalty for violation of the Privacy Act, termination of use of the federal database services ... etc.

With such serious consequences for the Town, I am not making statements about the abuse of power and violation of privacy lightly. Rather I offer the enclosed information from the U.S. Code as of 01-05-99 to support my position. (Please see attached documents). Briefly, the U.S. Code states that:

1. the correct use of background checks are restricted by federal code, and any misuse could be considered a federal criminal violation.
2. the Interstate Identification Index (III) should be used when specific criminal activity has been identified and is being investigated.

What specific criminal activity was occurring? What specific evidence was there to suspect a particular crime? What was the reason for the background check ... was it a random check (which is prohibited by code) or was Pezza a specific target for a specific reason (which is also prohibited by the code)?

Particularly disturbing is the fact that the Chief has stated he responded to a request from the Westerly Sun, and, as a result, he has acted against an individual taxpayer who, coincidently, has challenged/questioned the design for the new police station. Council members, no individual, no enterprise nor any business has the authority to ask a Police Department to conduct a background check on any individual, regardless of the individual's words, statements or resume. Chief Scuncio should know better than to respond to such a self-serving purpose. "I was asked," is not sufficient reason to violate an individual's right to privacy and to misuse the federal Interstate Identification Index system.

If the Town wants to be more secure in who it appoints to boards, committees and commissions, there are a number of less invasive ways to ensure the integrity of appointments, while working within the parameters of the law. For example, we can

- require resumes of all applicants
- review the resume carefully by calling former employers, etc
- call references and ask direct questions
- check prior employment records
- actively and purposely interview

Although it is not possible to make "no errors", with a systematic approach, we will do well in filling our boards, committees and commissions with contributing members committed to the mission of their appointment as their sole focus and commitment.

Thus, the question begs to be asked, who presents a problem here: Greg Pezza who has acted appropriately in his volunteer positions or Chief Scuncio who has misused his status and has placed the Town in a vulnerable position, open to litigation by both Greg Pezza and the US Department of Justice? ... And now, the Chief is requesting an ordinance to permit background checks of all town applicants for volunteer service. In essence, he wants you, the Council, to enact an ordinance to make right what he has already wrongly done!

Thus, is it Greg Pezza who presents a problem here, or is it the misuse of status and power and the violation of privacy that has placed the Town in a vulnerable position, open to litigation by both Greg Pezza and the US Department of Justice?

What is needed is clear thinking, not reactive thinking, and certainly not self-serving thinking. What can be done to stop this abuse of power, this invasion of privacy, this misuse of a federal database system, this behavior that threatens the Town and its citizens on numerous levels?

The US Department of Justice, through an Information Letter, is again reminding police departments of the correct use of the Interstate Identification Index (III). Misuse of this system may constitute a federal criminal violation and expose the offending department to termination of services.

Briefly stated, III should be used when **specific criminal activity** has been identified and is being investigated. The requirements demand specific evidence of a particular crime as the basis for the checks, and not the potential for criminality.

The FBI has created the purpose codes and maintains and automated system to log each inquiry and dissemination of the III record and the purpose for which it was accessed. When the Purpose Code C is indicated, it must accurately reflect that the purpose was properly used. Compliance audits are automatically conduced by the FBI.

There are administrative penalties in place for misuse, and this includes termination of service, as well as the potential from criminal sanctions including, but not limited to, misuse of public office duties and violation of the Privacy Act.

[Code of Federal Regulations]
[Title 28, Volume 1, Parts 0 to 42]
[Revised as of July 1, 2000]
From the U.S. Government Printing Office via GPO Access
[CITE: 28CFR20.3]

[Page 355-356]

TITLE 28--JUDICIAL ADMINISTRATION

CHAPTER I--DEPARTMENT OF JUSTICE

PART 20--CRIMINAL JUSTICE INFORMATION SYSTEMS--Table of Contents

Subpart A--General Provisions

Sec. 20.3 Definitions.

As used in these regulations:

(a) Act means the Omnibus Crime Control and Safe Streets Act, 42 U.S.C. 3701, et seq., as amended.

(b) Administration of criminal justice means performance of any of the following activities: Detection, apprehension, detention, pretrial release, post-trial release, prosecution, adjudication, correctional supervision, or rehabilitation of accused persons or criminal offenders. The administration of criminal justice shall include criminal identification activities and the collection, storage, and dissemination of criminal history record information.

(c) Control Terminal Agency means a duly authorized state, foreign, or international criminal justice agency with direct access to the National Crime Information Center telecommunications network providing statewide (or equivalent) service to its criminal justice users with respect to the various systems managed by the FBI CJIS Division.

(d) Criminal history record information means information collected by criminal justice agencies on individuals consisting of identifiable descriptions and notations of arrests, detentions, indictments, informations, or other formal criminal charges, and any disposition arising therefrom, including acquittal, sentencing, correctional supervision, and release. The term does not include identification information such as fingerprint records if such information does not indicate the individual's involvement with the criminal justice system.

(e) Criminal history record information system means a system including the equipment, facilities, procedures, agreements, and organizations thereof, for the collection, processing, preservation, or dissemination of criminal history record information.

(f) Criminal history record repository means the state agency designated by the governor or other appropriate executive official or the legislature to perform centralized recordkeeping functions for criminal history records and services in the state.

(g) Criminal justice agency means:

(1) Courts; and

(2) A governmental agency or any subunit thereof that performs the administration of criminal justice pursuant to a statute or executive order, and that allocates a substantial part of its annual budget to the administration of criminal justice. State and federal Inspector General Offices are included.

(h) Direct access means having the authority to access systems managed by the FBI CJIS Division, whether by manual or automated methods, not requiring the assistance of or intervention by any other party or agency.

(i) Disposition means information disclosing that criminal proceedings have been concluded and the nature of the termination,

including information disclosing that the police have elected not to refer a matter to a prosecutor or that a prosecutor has elected not to commence criminal proceedings; or disclosing that proceedings have been indefinitely postponed and the reason for such postponement. Dispositions shall

[[Page 356]]

include, but shall not be limited to, acquittal, acquittal by reason of insanity, acquittal by reason of mental incompetence, case continued without finding, charge dismissed, charge dismissed due to insanity, charge dismissed due to mental incompetency, charge still pending due to insanity, charge still pending due to mental incompetence, guilty plea, nolle prosequi, no paper, nolo contendere plea, convicted, youthful offender determination, deceased, deferred disposition, dismissed-civil action, found insane, found mentally incompetent, pardoned, probation before conviction, sentence commuted, adjudication withheld, mistrial-defendant discharged, executive clemency, placed on probation, paroled, or released from correctional supervision.

(j) Executive order means an order of the President of the United States or the Chief Executive of a state that has the force of law and that is published in a manner permitting regular public access.

(k) Federal Service Coordinator means a non-Control Terminal Agency that has a direct telecommunications line to the National Crime Information Center network.

(l) Fingerprint Identification Records System or ``FIRS'' means the following FBI records: Criminal fingerprints and/or related criminal justice information submitted by authorized agencies having criminal justice responsibilities; civil fingerprints submitted by federal agencies and civil fingerprints submitted by persons desiring to have their fingerprints placed on record for personal identification purposes; identification records, sometimes referred to as ``rap sheets,'' which are compilations of criminal history record information pertaining to individuals who have criminal fingerprints maintained in the FIRS; and a name index pertaining to all individuals whose fingerprints are maintained in the FIRS. See the FIRS Privacy Act System Notice periodically published in the Federal Register for further details.

(m) Interstate Identification Index System or ``III System'' means the cooperative federal-state system for the exchange of criminal history records, and includes the National Identification Index, the National Fingerprint File, and, to the extent of their participation in such system, the criminal history record repositories of the states and the FBI.

(n) National Crime Information Center or ``NCIC'' means the computerized information system, which includes telecommunications lines and any message switching facilities that are authorized by law, regulation, or policy approved by the Attorney General of the United States to link local, state, tribal, federal, foreign, and international criminal justice agencies for the purpose of exchanging NCIC related information. The NCIC includes, but is not limited to, information in the III System. See the NCIC Privacy Act System Notice periodically published in the Federal Register for further details.

(o) National Fingerprint File or ``NFF'' means a database of fingerprints, or other uniquely personal identifying information, relating to an arrested or charged individual maintained by the FBI to provide positive identification of record subjects indexed in the III System.

(p) National Identification Index or ``NII'' means an index maintained by the FBI consisting of names, identifying numbers, and other descriptive information relating to record subjects about whom there are criminal history records in the III System.

(q) Nonconviction data means arrest information without disposition

if an interval of one year has elapsed from the date of arrest and no active prosecution of the charge is pending; information disclosing that the police have elected not to refer a matter to a prosecutor, that a prosecutor has elected not to commence criminal proceedings, or that proceedings have been indefinitely postponed; and information that there has been an acquittal or a dismissal.

(r) State means any state of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

(s) Statute means an Act of Congress or of a state legislature or a provision of the Constitution of the United States or of a state.

[Order No. 2258-99, 64 FR 52226, Sept. 28, 1999]

[[Page 357]]

[Code of Federal Regulations]
[Title 28, Volume 1, Parts 0 to 42]
[Revised as of July 1, 2000]
From the U.S. Government Printing Office via GPO Access
[CITE: 28CFR20.33]

[Page 362]

TITLE 28--JUDICIAL ADMINISTRATION

CHAPTER I--DEPARTMENT OF JUSTICE

PART 20--CRIMINAL JUSTICE INFORMATION SYSTEMS--Table of Contents

Subpart C--Federal Systems and Exchange of Criminal History Record Information

Sec. 20.33 Dissemination of criminal history record information.

(a) Criminal history record information contained in the III System and the FIRS may be made available:

(1) To criminal justice agencies for criminal justice purposes, which purposes include the screening of employees or applicants for employment hired by criminal justice agencies;

(2) To federal agencies authorized to receive it pursuant to federal statute or Executive order;

(3) For use in connection with licensing or employment, pursuant to Public Law 92-544, 86 Stat. 1115, or other federal legislation, and for other uses for which dissemination is authorized by federal law. Refer to Sec. 50.12 of this chapter for dissemination guidelines relating to requests processed under this paragraph;

(4) For issuance of press releases and publicity designed to effect the apprehension of wanted persons in connection with serious or significant offenses;

(5) To criminal justice agencies for the conduct of background checks under the National Instant Criminal Background Check System (NICS);

(6) To noncriminal justice governmental agencies performing criminal justice dispatching functions or data processing/ information services for criminal justice agencies; and

(7) To private contractors pursuant to a specific agreement with an agency identified in paragraphs (a)(1) or (a)(6) of this section and for the purpose of providing services for the administration of criminal justice pursuant to that agreement. The agreement must incorporate a security addendum approved by the Attorney General of the United States, which shall specifically authorize access to criminal history record information, limit the use of the information to the purposes for which it is provided, ensure the security and confidentiality of the information consistent with these regulations, provide for sanctions, and contain such other provisions as the Attorney General may require. The power and authority of the Attorney General hereunder shall be exercised by the FBI Director (or the Director's designee).

(b) The exchange of criminal history record information authorized by paragraph (a) of this section is subject to cancellation if dissemination is made outside the receiving departments, related agencies, or service providers identified in paragraphs (a)(6) and (a)(7) of this section.

(c) Nothing in these regulations prevents a criminal justice agency from disclosing to the public factual information concerning the status of an investigation, the apprehension, arrest, release, or prosecution of an individual, the adjudication of charges, or the correctional status of an individual, which is reasonably contemporaneous with the

event to which the information relates.

(d) Criminal history records received from the III System or the FIRS shall be used only for the purpose requested and a current record should be requested when needed for a subsequent authorized use.

**Sec. 534. Acquisition, preservation, and exchange of identification records and information; appointment of officials**

- (a) The Attorney General shall -
  - (1) acquire, collect, classify, and preserve identification, criminal identification, crime, and other records;
  - (2) acquire, collect, classify, and preserve any information which would assist in the identification of any deceased individual who has not been identified after the discovery of such deceased individual;
  - (3) acquire, collect, classify, and preserve any information which would assist in the location of any missing person (including an unemancipated person as defined by the laws of the place of residence of such person) and provide confirmation as to any entry for such a person to the parent, legal guardian, or next of kin of that person (and the Attorney General may acquire, collect, classify, and preserve such information from such parent, guardian, or next of kin); [1]
  - (4) exchange such records and information with, and for the official use of, authorized officials of the Federal Government, the States, cities, and penal and other institutions.

- (b) The exchange of records and information authorized by subsection (a)(4) of this section is subject to cancellation if dissemination is made outside the receiving departments or related agencies.

- (c) The Attorney General may appoint officials to perform the functions authorized by this section.

- (d) For purposes of this section, the term "other institutions" includes -
  - (1) railroad police departments which perform the administration of criminal justice and have arrest powers pursuant to a State statute, which allocate a substantial part of their annual budget to the administration of criminal justice, and which meet training requirements established by law or ordinance for law enforcement officers; and
  - (2) police departments of private colleges or universities which perform the administration of criminal justice and have arrest powers pursuant to a State statute, which allocate a substantial part of their annual budget to the administration of criminal justice, and which meet training requirements established by law or ordinance for law enforcement officers.

- (e)
  - (1) Information from national crime information databases consisting of identification records, criminal history records, protection orders, and wanted person records may be disseminated to civil or criminal courts for use in domestic violence or stalking cases.

Nothing in this subsection shall be construed to permit access to such records for any other purpose.

- (2) Federal and State criminal justice agencies authorized to enter information into criminal information databases may include -
  - (A) arrests, convictions, and arrest warrants for stalking or domestic violence or for violations of protection orders for the protection of parties from stalking or domestic violence; and
    (B) protection orders for the protection of persons from stalking or domestic violence, provided such orders are subject to periodic verification.
- (3) As used in this subsection -
  - (A) the term "national crime information databases" means the National Crime Information Center and its incorporated criminal history databases, including the Interstate Identification Index; and
    (B) the term "protection order" includes an injunction or any other order issued for the purpose of preventing violent or threatening acts or harassment against, or contact or communication with or physical proximity to, another person, including temporary and final orders issued by civil or criminal courts (other than support or child custody orders) whether obtained by filing an independent action or as a pendente lite order in another proceeding so long as any civil order was issued in response to a complaint, petition, or motion filed by or on behalf of a person seeking protection.

---

## Footnotes

[1] So in original. Probably should be followed by "and".